Good morning, Your Honors. May it please the Court, Counsel. Chris DeHart. I represent Jerry Fuentes, the appellant in this case. There are two issues before this Court. The first would be the substantive ineffective assistance of counsel claim involving the second issue, which this Court asked us to brief, was the procedural bar issue and the timeliness issue. I'm going to address that first because that determines how this Court will review the substantive IAC claim. The — this Court reviews de novo, the district court's de novo review of the IAC claim. So because there was no finding on the merits in the State court, then this Court, or the district court, reviews it de novo. How do we know that there was no finding on the merits in the State court? That is what the district — the magistrate court found in the findings and recommendations that were issued in this case. I thought the magistrate judge assumed that. Did the district — did the magistrate judge recommend that the district court find that? She — well, this is — in the answer that the State filed in the district court, or in the — before the magistrate court was hearing this, the State, and this is included in the excerpts of record at page 25, says the California supreme court denied the petition as untimely with a citation to Clark. So — so, and maybe then my question is probably to the State. Did the State assume or concede that this was a procedural denial by the California supreme court both times? Well, the State argued one thing in district court — or before the magistrate court, then did not object to the magistrate court's findings and recommendations. And now, in its answering brief in this court, is arguing something slightly different. So my argument that I raised in my opening brief is that this issue is waived, that this should have been presented to — in its answer or in a motion to dismiss. It was not. And therefore, when the magistrate made the findings and recommendations that this was based on timeliness and there was a procedural bar, but the State did not assert a procedural bar. So it's a bit confusing. But so my point is that because of the waiver, the review that we don't consider the fair-minded jurist test, we don't consider the unreasonable application of or contrary to established supreme court precedent test, we don't follow Harrington v. Richter's doubly deferential test. This is a straight evaluation of ineffective assistance of counsel under Strickland. But so in other words, what's confusing here is that each of you is taking the opposite position from what you usually take. Is that right? In other words, you're arguing that it wasn't on the merits, and they're arguing that it was on the merits. Is that what's going on here? Yes, it is, actually. You're arguing for procedural default, and you are, in essence, arguing for a waived procedural default. Yes, because in their answer in the lower court, they specifically said this was not a procedural default. They said that's still their position. Isn't that right? Yes. It's their position because on this issue, there were two petitions filed before the California Supreme Court, the first one in 2007, which was a very bare-bones claim. And then after that was denied, a couple of months later, Mr. Fuentes received from trial counsel the trial file. And in it, he learned that there was a plethora of mental health evidence that could have been presented at trial. Then in 2011, Mr. Fuentes filed another petition in the California Supreme Court where he attached those documents. The first claim, the first time it was certainly decided on the merits, is that right? Yes. But your argument is that the second time it wasn't? The second time was a different claim, and it was not. Only because it had more in it. What's that? Only because it had more in it. Well, it's different because the first claim says that it's ineffective because counsel never explored mental health, which is different than counsel had this mental health evidence and didn't present it at trial, which is what the magistrate court found. And what this – and you're arguing that that one was procedurally defaulted, but that the government can't claim it because they're not arguing it? Yes. And so now they're arguing that it's not that it was timely, that the second one was a second or successive petition. I thought they were arguing that it was essentially the same thing, it was decided on the merits. Yes, but that's what I mean by second or successive. It's the same claim raised a second time. But that's not what the magistrate court found. That's not what the district court found. When the district or the magistrate court found that this was de novo review, we had the other. All right. Well, this all sets up the standard of review, but do you want to argue the merits at all? I do want to make sure that on the merits that it is clear that there is a distinction between a diminished actuality defense and a diminished capacity defense in the State of California as it relates to the mental state necessary for a crime. Do you think that Dr. Wicks's report had anything to do with actual diminished capacity as opposed to the capacity to have? Well, that's a thing that was struck by Dr. Wicks's report was he got no history of the murder, not a word. That would have been trial counsel's responsibility to present that information. But this is where it's not that Mr. Fuentes did not have the. I'm arguing that there was IAC, in effect, a sense of counsel, for not presenting this report, Dr. Wicks's report and Dr. Wicks's testimony. And I have a very hard time believing that Dr. Wicks could testify that Fuentes had or did not have premeditation and deliberation when he didn't know anything about the facts of the murder. There is a subtle difference because Dr. Wicks would not be allowed under California law to testify to what actually happened on that night. All Dr. Wicks would be able to allowed to testify to is that Mr. Fuentes has these inclinations to impulsivity that might lend themselves to acting rashly and inability  And he could testify that he could also testify that, in my considered opinion, he did not premeditate and deliberate before committing this act. That would be precluded under California law. No, no, no, no. What's precluded under Section 28 and 29 of the Penal Code, and I used to do this down at the Hall of Justice, is evidence as to his capacity to premeditate or deliberate, not whether he actually did. That's the difference. But if you look at Coddington, People v. Coddington, the California Supreme Court case that addresses this, they do say that the expert cannot testify to whether he actually harbored the requisite mental intent or not on the at the time of the offense. That's what Coddington says. They say, in my opinion, he did not premeditate and deliberate. No, that's he would not be allowed to testify to that. Why? Because that's precluded in the I thought he could, Coddington says that he, I must say that I've never been convinced that this distinction exists. I do not understand it. That this what exists? This whole distinction. I understand there's a bunch of words where people try to claim that it's different, but I've never been able to get my head around what's different. Nonetheless, Coddington says that an expert's opinion that a form of mental illness can lead to impulsive behavior is relevant to the existence or none of the mental states of premeditation and deliberation, regardless of whether the expert believed he actually harbored those mental states at the time of the killing. But my understanding is that he still could testify as to whether those behaviors could have affected the mental state, the relevant mental states, and that's what he wasn't doing. No, but my argument is that I think it's a little more subtle than that. So Dr. Wicks would testify that Mr. Fuentes had a long history of mental health issues, and that he the his mental health issues lead him to act impulsively, lead him to have an inability to process social situations and act appropriately, those kinds of things which, not about the specific event, but which a jury could infer, if he has this general mental condition that makes him susceptible to impulsivity, makes him unable to process how to do it. Kagan. But I would rather that he could, under Coddington and other cases, testify that because he's impulsive, it would be difficult for him to form these mental states, but not that he did or didn't do it at the time of the killing. Yes, that's right. But that's the second he wasn't doing. He wasn't connecting the impulsivity to the relevant mental states. Well, I'm not sure that he was required to, or I'm not sure, and I guess if the trial counsel didn't ask the expert to make that assessment, the expert's only going to. Well, that's true, but that, my understanding is the reason why it was, the court said that it wouldn't have made a difference because it was essentially, he might have not put it on for that reason because the connections weren't there. The magistrate court considered this to be and defined it as diminished capacity. And because the court said that, and that's what they thought, but I'm talking about the, whether the lawyer, not making a mistake about which was which, could have nonetheless decided that his testimony just didn't get where he wanted it to go. Well, I have no idea why the attorney decided to not present this evidence. In my view we're supposed to say if there's any reasonable reason that it's not some any lawyer in the world would have done it, then that's okay. Well, I don't think on the de novo review, I don't necessarily think that that's the standard, that any lawyer. The Strickland standard. In other words, without the double deference, the single deference is still. The objectively reasonable. Yes. I'm going to ask you this with respect to prejudice. Assume for the moment, for the purpose of the question, that it was defective performance. Where's the prejudice? Is the argument for prejudice that if this evidence had been developed and then introduced, not that we would have had an acquittal, but that we might have got second degree? Is that the argument? Manslaughter. The trial attorney was arguing for manslaughter. Was there a second degree in there as well? Was the jury given the choice of first, second, manslaughter, or just first degree and manslaughter? I don't recall that off the top of my head. I wouldn't be surprised if that was the case, because that's typically what happens. But I know that trial counsel argued in front of the jury to convict on manslaughter. The trial counsel conceded that the jury was given the choice of first degree and manslaughter. But it might make a difference to me if I'm trying to figure out the possible consequence of this evidence if the jury is given the choice of second degree murder, because the jump between first degree and manslaughter is a big one, and the jump from first to second is nowhere near as big, and the evidence might have made more difference if that's what's at issue. Then I would have to look that up. I don't have that answer for you right off the top of my head. Okay. Let's hear from the other side. We've taken you over time. We'll give you a minute.  Justin Riley on behalf of the Warden. May it please the Court. On the timeliness issue, I pled the case in the district court below, and I have only ever assumed that the State court denied this particular claim, the ineffective assistance of counsel claim, on the merits. And that is because it was presented to the State court on the first round of collateral review and denied on the merits with no procedural bars. You say presented to the State court. Are you referring to the first petition to the California Supreme Court? That is correct. Okay. It was denied on the merits. Was there anything in the denial that gave a citation, or was it just a flat denial? Flat denial. What about the second time? The second time, the Court – there were several – there was more than one claim in the second petition. And in the second petition, there was a citation to Inouye Clark which highlights that there has been a second presentation of a claim. We know that because we look down at the trial level on the second round of review, and the trial court on the second round of review found this exact claim to be a successive presentation. So when it got up to the California Supreme Court on that second round of review, the citation told me, Inouye Clark, that this is a second presentation of the same claim. Now, just in case it wasn't the same claim, because I know the district court found, oh, this is a completely different claim, even though it was the same claim with the addition of the Wicks report. That citation to Inouye Clark, and I briefed this in the second argument of my brief, was an alternative merits denial, because what the State court says with a successive petition – I'm sorry, successive presentation denial, is that we've seen this claim before, and to the extent you change anything at all with regard to the facts of the law, it's a change that didn't make a difference. That's an alternative merits denial. That's why I have only ever treated this denial, the State court's resolution of the ineffective assistance of counsel claim, as a merits denial, at all times waiving nothing. I'll move on to the merits. Sotomayor, well, let me ask you this, though. Yes. In the petition presented to the California Supreme Court the first time around, it was presented pro se, and it had very little in it that would have helped that ineffective assistance of counsel. That is to say, if I'd been the California Supreme Court with that in front of me, and only that in front of me, I would have denied, too. But I now know a lot more about this. Sure. And this is not, for purposes of my question, a pinholster question. I know a lot more about this because of things that were presented at the California courts later. Absolutely. So what do I do with that? That is to say, eventually, we got a fair amount of evidence presented to the California courts that were not presented to the California Supreme Court the first time around. Sure. And it was presented to him the first time around by him acting pro se. Do we say he's absolutely stuck with that pathetically inadequate proffer the first time around in that first petition? Absolutely not. And that's where the alternative nature of the successive presentation bar comes in. It's, we've seen the claim before, and, importantly, if you've changed the claim at all with the addition of new facts, for instance, the Wicks report, it's not enough to change the outcome of the first proceeding. It's the alternative nature of that bar that takes into account more pleading, more evidence.  Absolutely. The successive petition bar is decades old, and it is cited in In re Clark, which is cited in my brief. That's the quick answer. The more involved answer is both petitions were pled pro se. In the first petition, he supported his claim with a report from a prior physician, mental health expert. And he noted that he was tested by Dr. Wicks, but did not attach a copy of the report. He argued that Dr. Wicks, who tested him, should have come to testify at his trial and bolster his mental health defense. He argued all that in his first petition. The second petition was a little more argument and not much, just a little, in the Wicks report. The Wicks report was pretty much the only thing that he changed between the first and second petition. With regard to that claim. So all of a sudden, the actual report shows up. The report shows up. And then the California Supreme Court. I'm sorry. I mean, without the report, he's got nothing. With the report, he finally says, okay, well, this is what should have been presented. This is what he would have said, sure. So I think it's a big change. That's not a little change. Even if I agree with you, and I do, he has the evidence now. It's a huge change. The California Supreme Court looks at it and says, even with this huge factual change, you have all the support you alleged in the first petition, it doesn't make a difference. The alternative nature of the successive petition bar denying the claim on the merits doesn't speak to the minuscule amount of evidence that is presented. It speaks to the quality of the evidence presented. Does it change the outcome? No. Denied. Sotomayor, I'm sorry. Sotomayor, the merits is a question of and let's look at it through the prejudice prism, it might be simpler. But, I mean, the same prejudice prism, I mean, the same question comes up both as to the equality of representation prong and also the prejudice prong. And that is what the magistrate judge said that because the report doesn't indicate that Dr. Wicks would have testified that Petitioner's deficits are inherently incompatible with premeditation or deliberation, therefore, it was likely to have an impact. But that precisely he couldn't have testified to, is that right? He cannot make he cannot testify to an ultimate question. I.e. Experts cannot do that in general. Petitioner's deficits are inherently incompatible with premeditation or deliberation. Isn't that capacity? It is capacity, yes. So he couldn't have done that. That's right. All right. So the magistrate judge's analysis doesn't work. So as to what he could have testified to, I gather what he could have testified to was this person has impulsivity and lack of intelligence and so on and so on, and that that something about this is why I say I don't understand the distinction, something about, you know, and that can be in effect his ability to premeditate or deliberate, but not what exactly could he have testified to? That's the problem. And I believe that's what the district court was getting into. It wasn't confusing the difference between diminished capacity and diminished actuality. It's that the district court was recognizing the only thing we have on the record in front of us goes to diminished capacity. There has to be some sort of connection, as Judge Beyo was stating. There has to be some sort of connection between his impulsivity as tested and his mental state at the time of the crime. You can't just do that. I thought that's what he's not allowed to do. I thought that's precisely what Coddington says he's not allowed to do. That's not a net --" I'm sorry. Go ahead. Go ahead. He's not allowed to testify and make that conclusion for the jury, but there has to be evidence of that. There can't just be impulsivity in the air. There has to be substantial evidence connecting the impulsivity to the crime. For example --" But he can't say that I, at the time of the crime, his impulsivity mattered. He can't say that. What could he say? He could say that the defendant acts as he tends to act very impulsively, consistent with his report, but there was no other evidence tying that to the crime. For example, Dr. Wick's report could prove or could tend to prove to the jury that impulsivity resulted in him going and shopping and running up a credit card bill, being impulsive with regard to shopping. There had to be something that tied impulsivity reflected in the report to the crime. And that wouldn't have happened necessarily through Dr. Wick's testimony, but it wasn't reflected in the report. What you have to do, you can't view the report as necessarily what exactly would have come in at trial. It was foundation for Dr. Wick's later testimony. Dr. Wick's report was a signal to trial counsel that, hey, here's what I would have testified to and here's how the connections would have been made. You have to put yourself in trial counsel's shoes. After trial counsel gets Dr. Wick's report, he's on the phone with Dr. Wick's. Hey, what does this 19 pages of report mean? How can I use this at trial? How would you be cross-examined on this? How would an opposing expert handle your testimony? How do I connect it? Ginsburg. Just to be specific, you're not arguing that this would have been inadmissible because it wouldn't have been. It would have been admissible, because even though it doesn't make the connections. Well, that's the problem. Because it doesn't make the connections, Petitioner hasn't even shown it could come into trial yet, because there's no connection between impulsivity and error. It didn't make the connections. We know it couldn't have come into trial. That's why I'm totally mystifying. Pardon me? But Cunnington said an expert's opinion that a form of mental illness can lead to impulsive behavior is relevant to the existence or none of the mental states of premeditation and deliberation, regardless of whether the expert believed a defendant actually harbored those mental states at the time of killing. It is relevant generally to prove a mental impairment that you have may have acted I'm sorry. Go ahead. Could affect. But they seem to be saying that it's relevant to the existence of mental states of premeditation and deliberation, and therefore it can come in. So it could have come in. Yes, but the mental impairment has to be connected to the crime that was actually committed somehow. But the crime in Cunnington is exactly this crime, the mental states of premeditation and deliberation. So we know that it is relevant to this crime because Cunnington said so. That goes back to my comment. There can't just be impulsivity in the air. The impulsiveness has to somehow have affected his decisions to commit the crime. There has to be a connection between, oh, he's just impulsive. He's mentally impaired in some way. He can't learn. He can't remember. Well, how does that affect his decision to kill the victim? But I think that what you're saying makes some sense, but I don't think under California law that means that the report is inadmissible. It just means that the utility for the defendant is somewhat limited. In California, there is a relevance standard where you have to show substantial evidence that the attorney can say. But I just heard the excerpt from Coddington says it can come in, and then the lawyer can say, but it doesn't the prosecutor can say, but it doesn't tell us much. That's a general admissibility rule which has to act in concert with – it has to be connected to some issue in this case. But of course it's connected to the issue in the case. You've got this – you have a defendant with these characteristics. He's going to have trouble with impulse control. That's what the psychological report from the expert says. And then the lawyer says, well, look at that. Look at the crime. So the lawyer can make the argument that that's the connection. And then the jury is asked to determine whether there's a connection. We're told by Coddington that the psychological expert cannot say, and therefore, I conclude he did not have the mental state required for the crime. But he can tell us about the mental state as he describes his characteristics. Imagine, if you will, Dr. Wicks – What's wrong with my description of California law? Because there has to be a connection between the evidence and some issue at trial. Consider, if you will, Dr. Wicks makes the conclusion that when a Petitioner is in a stressful situation, he immediately falls asleep, narcolepsy. How is that connected to whether or not he killed the victim? Is that what Dr. Wicks said? Well, see, that's the problem. Dr. Wicks made an impulsivity conclusion, but how is that impulsivity connected to whether or not he killed the victim or what his intent was at the time he killed the victim? There has to be a connection. Well, of course, on this case, there's a very strong argument that there is a connection. You've got a kid who's got mental problems. You've got a fairly strong argument on the facts that this man is terribly irritating to him. Maybe or maybe not saying you're a damn Mexican. Mexicans are all alike. Irritating him. I mean, at that point, it's child's play for his lawyer to make an argument that his impulsivity comes into play, and the jury can or cannot believe it. I believe that is true, yes. And he did make that argument, but he didn't have any experts saying that he had this overall characteristic. He got a free presentation without a battle of the experts, without cross-examination of an expert through his father's testimony. What do you mean he got a free presentation? The victim's — I'm sorry. Petitioner's father took the stand and testified vaguely that Petitioner couldn't understand, had a low IQ, seemed to be not very intelligent. That allowed trial counsel to argue to the jury, listen, he kind of has this IQ problem, maybe mental impairment, and kind of threw out a taste of maybe intent wasn't there. If he had presented an expert, if he had presented that report, the prosecutor would have acted in kind, called his own expert, tested the Petitioner. And this is where you have to walk in the trial counsel's shoes. Trial counsel called Dr. Wicks. He said, how would your report fare on cross-examination? How would it fare under peer review? And we have to presume that under Strickland.  Scalia, I'm sorry. Go ahead. Yes. What was missing from Dr. Wicks' report that, had it been in there, would have made his report and his testimony relevant? Was it — was it something like, on this occasion, the defendant was faced with a situation which activated his impulsivity? Yes. There had to have been some sort of hypothetical — Could he say that? Pardon me? Could he say that under California law? Absolutely. Remember, this report is foundation. Right. What? This report is foundation. What do you mean? I'm sorry. This report is a help to trial counsel to present a defense. This report doesn't come in as evidence. Could he have testified to that, to the sentence, Judge — He could not have testified to that. No, he could not have testified to that. But there has to be some basis for the jury to make that connection. So he couldn't have testified to it. So what's the difference if it was in the report or not in the report? He couldn't have testified to it. If it was in the report, that makes the proposed testimony a little more bulletproof to peer review, cross-examination. Because imagine the questions the prosecutor is going to ask when — if Dr. Wicks stood up and testified consistent with his report. He's impulsive. What do you mean? Shopping? Isn't impulse control something that every intentional murderer suffers from? So he has to make some sort of connection to Petitioner's text. But he couldn't testify to it. He couldn't have testified to it, but then he would have showed trial counsel had — I see we are disagreeing on that. I just don't understand it. I'm not even criticizing you. I don't understand the whole thing. With the Court's permission, I'd like to make one very minor point. It's a major point, but we'll go very quickly. You've got 30 seconds to make it. Okay. Dr. Wicks' report supported a manslaughter conviction. Dr. Wicks' report could not have been injected into a heat-of-passion defense because diminished actuality cannot yield a voluntary manslaughter verdict. It cannot. The California Supreme Court has been extremely clear that diminished actuality results in either acquittal or murder. It couldn't have been injected into this defense. There would have been incongruent defenses. There would have been bifurcated. There would have been trial court instruction. You've had your 30 seconds. I'm sorry. Thank you. Thank you. Let's put a minute. Yes. I think the diminished actuality capacity issue has been addressed. What I want to reflect on briefly is the waiver issue. And while the State — Wait a minute. Wait a minute. Is he right that you couldn't get to manslaughter anyway? I don't know that that's true. Well — I haven't researched that. It's fairly critical, doesn't it? If it wouldn't have — since the defense was manslaughter, if all of this wouldn't have led to manslaughter under California law, then it's all spinach. Then I don't know the answer to that question, Your Honor. And you're right. It might be critical if that's the case. But this is the first time that the State has proffered that as a reason for why this is not admissible. But as to the waiver argument, the State stood here and argued that it has only ever said that this was a second or successive petition based on the first petition. And in their answer in the district court, they specifically cited to timeliness. They used the phrase timeliness. The California Supreme Court denied the petition as untimely with a citation to Clark. So what's the record or ER site for what you just read? 25. ER 25? Yes. ER 25, line 21. That's the State's answer that was filed at the district — before the magistrate. I can — I got this enough. I can find it. Okay. And then the magistrate court, in issuing the findings and recommendations, indicated, Petitioner argues that the claims merit de novo, reviewed de novo in this court because the claim at issue was rejected by the California Supreme Court in 2011 on timeliness grounds, the court agrees. So that was the magistrate's finding. And then the very last page of the magistrate's finding says the parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order. The State did not file any objections to the magistrate's findings and recommendations. It's only in the answering brief in this court that the second or successive argument was raised. And then they're saying that Mr. Fuentes had the burden of rebutting that, and that should have been done in district court. Okay. Thank you very much. The case of Fuentes v. Spearman now submitted for decision.
judges: W. Fletcher, Berzon and Bea